```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


ROBIN ELAINE ROBINSON,

                    Plaintiff,

vs.                                    Case No. 14-2590-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 26, 2013, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 9-19). Plaintiff alleges that she had been disabled since September 10, 2010 (R. at 9). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2015 (R. at

11).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 11).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 11).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 13), the ALJ found at step four that plaintiff could perform past relevant work as a retail sales clerk (R. at 18).  In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err in the weight accorded to the opinions of various medical sources in regards to plaintiff's physical RFC?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other

medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

6

source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff's treating rheumatologist, Dr. Ruhlman, completed a physical RFC form dated March 23, 2012. Dr. Ruhlman diagnosed plaintiff with fibromyalgia, fatigue and depression. Dr. Ruhlman opined that plaintiff frequently had symptoms severe enough to interfere with attention and concentration, and was incapable of even low stress jobs. He indicated that plaintiff's medications cause drowsiness, fatigue and nausea, which have implications for working. He opined that plaintiff

7

could stand/walk for less than 2 hours in an 8 hour workday, and could sit for 2 hours in an 8 hour workday.  He believed plaintiff needed a job which permits shifting positions at will from sitting, standing or walking, and would need unscheduled breaks every 30 minutes for at least 5 minutes before returning to work, and that plaintiff would need to lie down during the break.  As a result of her impairments and treatment, Dr. Ruhlman indicated that plaintiff would miss more than 3 days of work per month (R. at 415-420).

The ALJ stated that Dr. Ruhlman's treatment records are sparse with no detailed physical examinations, and his opinion that plaintiff can only sit, stand and walk for no more than 4 hours in an 8 hour work day would result in her needing to lie down for the other four hours.  The ALJ indicated that there is no objective medical evidence to support plaintiff's need to lie down for 4 hours per day or her inability to sit, stand and walk for no more than 4 hours a day.  The ALJ further stated that nothing in the record supports a limitation of lifting and carrying no more than 10 pounds rarely, and that nothing in the record supports his opinion that plaintiff would miss more than 3 days of work a month.  Therefore, the ALJ gave little weight to his opinion (R. at 16).

The ALJ gave substantial weight to the opinions of Dr. Eades, a state agency medical consultant who reviewed the

8

medical records (R. at 16).  Dr. Eades made physical RFC findings limiting plaintiff to light work (R. at 57-58), which were adopted by the ALJ in her RFC findings (R. at 13).

In her report, Dr. Eades found plaintiff only partially credible, indicating that the alleged functional limitations due to physical MDIs [medically determinable impairments] are disproportionate to objective findings in the MER [medical evidence of record].  Dr. Eades further stated that the alleged level of fatigue in the function report is not reflected at office visits (R. at 56).  Furthermore, Dr. Eades set forth in her report a detailed discussion of the medical record in support of her RFC findings (R. at 58-59).

Although plaintiff is not alleging error in regards to the ALJ's mental RFC findings (Doc. 12 at 7), plaintiff argues that the finding of psychologist Dr. Pulcher that "adaptability and persistence are apparently severely limited by her fibromyalgia and irritable bowel syndrome symptoms, and by her avoidance of situations where these situations are most problematic" (R. at 368) should have been accorded greater weight by the ALJ.  The ALJ accorded "some" weight to the opinions of Dr. Pulcher (R. at 15).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The only issue before the court is whether the ALJ's findings regarding plaintiff's physical RFC is supported by substantial evidence. The ALJ found that there was no objective medical evidence or other evidence in the record to support the limitations found by Dr. Ruhlman (R. at 16). Dr. Eades, in her report, stated that the alleged functional limitations are disproportionate to the objective findings in the medical record,[1] and that the alleged level of fatigue is not reflected in the office visits (R. at 56). These findings by Dr. Eades

---

[1] According to SSR 12-2P (Evaluation of Fibromyalgia), the agency "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." 2012 WL 3104869 at *2.

10

provide support for the reasons given by the ALJ for discounting the opinions of Dr. Ruhlman.  Dr. Eades then provided a detailed discussion of the medical evidence in support of her RFC findings(R. at 58-59).  Dr. Pulcher did not provide any specific limitations regarding plaintiff's physical RFC.

The court will not reweigh the medical evidence regarding plaintiff's RFC.  The conclusions of the ALJ regarding the relative weight accorded to the medical opinion evidence are reasonable, and the ALJ's RFC findings are supported by substantial evidence.  The ALJ did not need to explicitly discuss all of the § 404.1527 factors for each of the medical opinions.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  It is sufficient if the ALJ provided good reasons in her decision for the weight she gave to the treating source opinions.  Nothing more is required.  Id.  The court finds that the ALJ in this case provided good reasons in her decision for the weight she gave to the treating source opinions.  The court finds that the balance of the ALJ's analysis of the medical opinion evidence is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded

that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 15th day of December 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge